UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EDWARD SALKA and JENNIFER SALKA, as parents of A.S., deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER E. CAMPBELL, SHIRLEY R. CAMPBELL, MERRILLVILLE COMMUNITY SCHOOL CORPORATION, and MERRILLVILLE HIGH SCHOOL, <br><br> Defendants. | CAUSE NO.: 2:18-CV-420-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF No. 66] and Motion to Strike [ECF No. 80], filed by Merrillville Community School Corporation and Merrillville High School (the "School Defendants"). The Motion for Summary Judgment is fully briefed. The Plaintiff did not respond to the Motion to Strike and the time to do so has passed.

For the reasons set forth below, the Court grants the Motion to Strike, grants the Motion for Summary Judgment as to the federal claim, relinquishes supplemental jurisdiction over the state law claim, and remands the case to state court for further proceedings.

**PROCEDURAL BACKGROUND**

The Plaintiffs filed an Amended Complaint against Defendants Christopher E. Campbell, Shirley R. Campbell, and the School Defendants in the Porter County, Indiana, Superior Court on October 15, 2018. Am. Compl., ECF No. 4. The Plaintiff brings a state law negligence claim against all four Defendants and a federal claim for relief under Section 504 of the Rehabilitation

Act of 1973 against the School Defendants. *Id.* The Plaintiffs seek monetary compensation for the death of their son and related expenses. *Id.* at 2–3, 5–6. The School Defendants removed the case to federal court because the Section 504 claim presents a federal question. ECF No. 1. The parties completed discovery on June 21, 2022. *See* ECF No. 62.

Following the completion of discovery, on August 15, 2022, the School Defendants filed Defendants' Motion for Summary Judgment [ECF No. 66]. The Plaintiffs responded on October 28, 2022. ECF Nos. 74–76. A month after their response, on November 29, 2022, the Plaintiffs filed a supplemental response to the School Defendants' statement of material facts. *See* ECF No. 79. The next day, on November 30, 2022, the School Defendants moved to strike the Plaintiffs' supplemental response [ECF No. 80] and filed a reply [ECF Nos. 81–82]. The Plaintiffs did not respond to the School Defendants' Motion to Strike.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MOTION TO STRIKE

On October 3, 2022, the Court granted the Plaintiffs a second extension on their deadline to respond to summary judgment. ECF No. 73. The Court set the response deadline as October 28, 2022. *Id.* On October 28, 2022, the Plaintiffs filed a response brief [ECF No. 74], a response to the School Defendants' statement of material facts [ECF No. 75], and a designation of materials in support of their response [ECF No. 76]. One month later, on November 29, 2022, the Plaintiffs filed a Supplemental Response to Statement of Material Facts [ECF No. 79].

The next day, on November 30, 2022, the School Defendants moved to strike the Plaintiffs' supplemental response. ECF No. 80. As the School Defendants note in their motion, the Plaintiffs filed their supplemental response after the October 28, 2022 response deadline, without consent of the School Defendants, and without seeking leave of Court. The Court therefore grants the Motion to Strike the Plaintiffs' supplemental response.

## MATERIAL FACTS

At all relevant times, Andrew Salka was a student at Merrillville High School with a 504 plan.[1] Am. Compl. at 1. James Stamper was the assistant principal at Merrillville High School. Stamper Dep. at 11:9–12:2, ECF No. 69-3. Stamper did not have any role in the development of Andrew's 504 plan. Stamper Dep. at 14:20–22, ECF No. 76-11. Stamper had not seen Andrew's 504 plan before October 17, 2016. *Id.* at 32:9–11. Stamper was unaware that Andrew was a 504 student on the day in question. *Id.* at 71:17–72:14.

On October 17, 2016, Andrew Salka was in the cafeteria during his lunch hour, along with four to five hundred students. Stamper Dep. at 26:15–27:9, ECF No. 69-3. Andrew had his earbuds in, which was against school rules. *Id.* at 28:4–23. Stamper, tapping his own ear, walked up to Andrew and asked him to remove his headphones. *Id.* at 31:3–15. In response, Andrew muttered a profanity, looking anxious, so Stamper walked away to give Andrew some space and continued to walk around the cafeteria. *Id.* at 31:17–23.

About a minute later, Stamper again approached Andrew, who still had his earbuds in, and again asked him to put them away. *Id.* at 32:20–33:9. As Stamper approached, Andrew removed his earbuds, but he put them back in his ears after Stamper asked him to put them away again. *Id.* at 33:11–21. Stamper again walked away to give Andrew some space and returned a

---

[1] A 504 plan aims to prevent excluding a student based on his or her disability by adjusting a school's typical program to accommodate the student's disability. *See, e.g., Loch v. Edwardsville Sch. Dist. No. 7*, 327 F. App'x 647, 648–49 (7th Cir. 2009) (accommodating a student's diabetes by requiring teachers to give the student additional time to complete assignments when she misses class and permitting her to test her blood sugar or eat when necessary). These plans are named after Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C.A. Section 794. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .").

minute later to again ask Andrew to put his headphones away. *Id.* at 34:9–20. The third time, Andrew questioned Stamper, stating that everyone else had headphones in. *Id.* at 35:9–21.

After Andrew refused to put his headphones away, Stamper asked for the headphones, per school policy, and Andrew refused to turn them over, using profanity, getting loud, and creating a disturbance in the cafeteria. *Id.* at 36:7–19. In response, Stamper attempted to deescalate the situation and asked Andrew if he was okay, and Andrew indicated he was having an issue with his girlfriend and that something had happened to his uncle. *Id.* at 37:2–23.

Stamper asked Andrew if he wanted to see the social worker, and Andrew responded with "something like," "Fuck it. I'm calling my mom." *Id.* at 38:4–9. Andrew continued to curse, so Stamper took him to his office. *Id.* at 38:10–21. When they left the cafeteria, Stamper gave Andrew the option of going to various places in the school—the social worker's office, the ISS office, Stamper's office, or the benches outside the main office—and he refused them all. *Id.* at 46:17–25. Instead, Andrew walked through the double doors to call his mother, and Stamper gave him the time to further deescalate. *Id.* at 47:1–20. Stamper suspended Andrew for the remainder of the day and the two following days. *Id.* at 51:7–20.

Andrew left the school at approximately 12:40 p.m. that day. *Id.* at 56:9-20. After Andrew left the school, he talked to his mother and advised that he was walking to his girlfriend's house. Jennifer Salka Dep. at 51:1–3, ECF No. 76-12. The Amended Complaint alleges that, shortly after leaving the school, Andrew Salka, a pedestrian, was struck and killed by Defendant Christopher Campbell while operating an automobile owned by Defendant Shirley Campbell. *See generally* Am. Compl. ¶¶ 3–6.

At the time of the accident, Defendant Christopher Campbell had a "large cocktail of different drugs in his system," including Opiates, Benzodiazepines, and THC. Sentencing Order

5

1, *Indiana v. Campbell*, Cause No. 45G02-1705-F4-19 (Lake Sup. Ct. Jan. 15, 2019), ECF No. 69-5. Defendant Christopher Campbell was "traveling in excess of the posted speed limit when he veered off the roadway and struck [Andrew Salka] who was walking nearby." *Id.* Defendant Christopher Campbell's driver's license was suspended at the time and had been suspended forty-nine times. *Id.* On or about January 8, 2019, Defendant Christopher Campbell pled guilty to causing death when operating a motor vehicle with a Schedule I or II controlled substance in the blood, a Level 4 felony. *See id.*

## ANALYSIS

The School Defendants seek summary judgment on both the Plaintiffs' claim for negligence and on their claim for relief under Section 504 of the Rehabilitation Act of 1973.

**A.     Federal Claim**

The Plaintiffs seek compensatory relief from the School Defendants based on the School Defendants' alleged violation of Section 504 of the Rehabilitation Act of 1973. The Seventh Circuit Court of Appeals has held that discrimination under Section 504 may be proven "by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999).

To prove the claimed violation of Section 504, the Plaintiffs argue method "(2)," that Mr. Stamper refused to provide Andrew Salka with a reasonable modification of the school's program. However, the Plaintiff's request for compensatory relief under Section 504 requires a showing of intentional discrimination, and the Plaintiff has not shown intentional discrimination.

Therefore, the Court must grant summary judgment in favor of the School Defendants on the Plaintiff's Section 504 claim.

Section 504's intentional discrimination requirement for compensatory relief comes from Title VI of the Civil Rights Act of 1964. Section 504 "adopts the remedies available under Title VI." *Sandlin v. Switzerland Cnty. Sch. Corp.*, No. 4:08-CV-47, 2009 WL 2563470, at *8 (S.D. Ind. Aug. 17, 2009) (citing 29 U.S.C. § 794(a)); *see* 29 U.S.C. § 764a(a)(2). The Supreme Court has interpreted Title VI and determined that, in a "case where deliberate discrimination on racial grounds is not shown," the remedies under Title VI "should be limited to declaratory and injunctive relief ordering future compliance with the declared statutory and regulatory obligations," and that monetary relief "based on past unintentional violations should be withheld." *Guardians Ass'n v. Civil Serv. Com'n*, 463 U.S. 582, 598 (1983).

In *Guardians*, the Supreme Court explained "that Title VI is spending-power legislation" intended to be "contractual." *Id.* at 598–99. The Supreme Court elaborated on the "contractual" nature of the statute: "The mandate of Title VI is very simple. Stop the discrimination, get the money; continue the discrimination, do not get the money. Title VI imposes no obligations but simply extends an option that potential recipients are free to accept or reject." *Id.* at 599 (quotation marks and citations omitted). The Court reasoned that if a court concludes that a recipient of federal funds has unlawfully discriminated, the remedies awarded against the recipient "must respect the privilege of the recipient of the federal funds to withdraw and terminate its receipt of federal money rather than assume the further obligations and duties that a court has declared are necessary for compliance." *Id.* at 597. Accordingly, the Court held that "compensatory relief . . . is not available as a private remedy for Title VI violations not involving intentional discrimination." *Id.* at 603.

Although *Guardians* did not involve a case of intentional discrimination, the opinion explains that "[i]n such situations, it may be that the victim of the intentional discrimination should be entitled to a compensatory award." *Id.* at 597. The Supreme Court later affirmed that, in *Guardians*, "a clear majority expressed the view that damages were available under Title VI in an action seeking remedies for an *intentional* violation." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 70 (1992) (emphasis added); *see also Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1577 (2022) (Breyer, J., dissenting) (citing several anti-discrimination statutes, including Section 504, and stating that "[w]e have held that victims of intentional violations of these statutes may bring lawsuits to recover, among other relief, compensatory damages").

More recently, the Seventh Circuit Court of Appeals has held that under the Rehabilitation Act, "compensatory damages . . . may be available only for claims of intentional discrimination." *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) (citing *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528, 528 n.4 (7th Cir. 2014)). In *CTL*, the Seventh Circuit noted that "all circuits to consider the question have held that compensatory damages are only available for *intentional* discrimination." 743 F.3d at 528 n.4 (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260–65 (3d Cir. 2013)).

Here, the Plaintiffs have not shown intentional discrimination. The Plaintiffs do not argue that Mr. Stamper disciplined Andrew Salka and released him from school early because of Andrew's disability. Nor would the facts support such an argument. Mr. Stamper confronted Andrew because Andrew had his headphones in, which was against school policy. Mr. Stamper eventually released Andrew from school early because Andrew refused to comply with the policy. Further, the parties agree that Mr. Stamper did not know of Andrew's disability. Thus, he could not have intentionally discriminated against Andrew based on that disability.

To be sure, the Plaintiffs do not argue that the School Defendants intentionally discriminated against Andrew; they argue that the School Defendants failed to provide Andrew with a reasonable accommodation. To receive the compensatory relief they request under Section 504, the Plaintiffs are required to demonstrate intentional discrimination. Because the Plaintiffs have not shown intentional discrimination, the School Defendants are entitled to summary judgment on the Plaintiffs' Section 504 claim.

**B.     State Law Claim**

The School Defendants removed this case from state court because the Plaintiffs' Section 504 claim presented a federal question. The Court thus exercised federal question jurisdiction over the Section 504 claim and supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law negligence claim. Upon granting summary judgment on the Section 504 claim, the Court will no longer have federal question jurisdiction. The Court therefore chooses to relinquish supplemental jurisdiction over the remaining claim, which is brought under state law.

"When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). While the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co.*, 672 F.3d at 479 (quotation marks and citation omitted). As the Court has not engaged in any meaningful review of the merits of the state law claim and has

9

not otherwise committed substantial judicial resources to it, declining to exercise jurisdiction is proper. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case.").

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the School Defendants' Motion to Strike [ECF No. 80] and GRANTS in part and DENIES in part the School Defendants' Motion for Summary Judgment [ECF No. 66], granting summary judgment in favor of the School Defendants on the Plaintiffs' federal claims brought under Section 504 of the Rehabilitation Act of 1973. The Court DIRECTS the Clerk of Court to enter judgment against the Plaintiffs Edward and Jennifer Salka and in favor of the Defendants Merrillville Community School Corporation and Merrillville High School on the Plaintiffs' Section 504 claim.

The Court RELINQUISHES jurisdiction over the remaining state law claim against all the Defendants and REMANDS the case to the Porter County, Indiana, Superior Court for all further proceedings.

SO ORDERED on August 28, 2023.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT